UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ————————————————— ) | |
| LAVON SAVOY-KELLY, <u>et</u> <u>al.</u>, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 04-1751 (GK) |
| ) | |
| EASTERN HIGH SCHOOL, <u>et</u> <u>al.</u>, ) | |
| ) | |
| Defendants. ) | |
| ————————————————— ) | |

<u>MEMORANDUM OPINION</u>

Plaintiffs, Lavon Savoy-Kelly and her son, D.S., bring suit against Defendants Eastern High School ("Eastern"), the District of Columbia and Mayor Anthony Williams, alleging a denial of rights to due process, equal protection and equal access to education, pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1985, the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400 <u>et</u> <u>seq.</u>, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 1231 <u>et</u> <u>seq.</u>, section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701 <u>et</u> <u>seq.</u>, and the Fifth Amendment of the United States Constitution.

This matter is now before the Court on Defendants' Motion to Dismiss and Defendants' Motion for Summary Judgment. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Defendants' Motion to Dismiss, [#5] is **granted** with respect to Plaintiffs'

Rehabilitation Act and Section 1983 claims[1], and Defendants' Motion for Summary Judgment, [#13] is **granted** with respect to Plaintiffs' IDEA claims arising from the hearing officer's decisions of October 24, 2003 and September 20, 2004, and **remanded** for consideration of Plaintiffs' Motion for Reconsideration of the March 10, 2004 hearing officer's decision.

## I. BACKGROUND[2]

D.S. has been a special education student since 1996 and qualifies for a free appropriate public education ("FAPE") under the IDEA. Compl. ¶ 8. D.S. is now approximately nineteen years old.[3] Plaintiffs allege that D.S. has not received appropriate educational services from the 2000-2001 academic year to the present.[4] Id. ¶ 9.

---

[1] Defendants moved to dismiss Plaintiffs' IDEA claims in both their Motion to Dismiss and their Motion for Summary Judgment. Because the Court must rely on the Administrative Record to address these claims, they will be addressed only in considering the Motion for Summary Judgment.

[2] Plaintiffs' Complaint and papers are extremely difficult to follow, very incomplete, and do not provide the Court with the appropriate information upon which to base its decision. Therefore, the Court has relied on the Administrative Record, where necessary, to supplement Plaintiffs' incomplete rendition of the facts of this case.

[3] The Court cannot discern D.S.'s exact age, as his date of birth has been redacted from the administrative record and all filings in this Court.

[4] Although Plaintiffs claim Defendants have not provided the appropriate educational services since the 2000-2001 school year, they provide no information pre-dating the October 2003 due process

(continued...)

2

At Plaintiffs' request, a due process hearing was held on
October 8, 2003, at which Plaintiffs reached an agreement with the
District of Columbia Public Schools ("DCPS") to formulate an
adequate educational program for D.S.. Id. ¶ 10. The hearing
officer issued an order on October 24, 2003 which set forth the
schedule the parties would follow in setting up D.S.'s
Individualized Education Program ("IEP"). Id. ¶ 11. The hearing
officer's decision required "DCPS, inter alia, to facilitate
Petitioner's placement, on an interim basis, at Eastern [High
School], to convene a MDT [Multidisciplinary Team]/IEP
[Individualized Education Program] meeting and develop an IEP on or
before November 7, 2003, to complete all evaluations recommended by
the MDT by December 12, 2003, and to reconvene an MDT/IEP meeting
within ten days of the completion of the evaluations."
Administrative Record ("AR") at 4 (Sept. 20, 2004 HOD). The
majority of Plaintiffs' claims stem from Defendants' alleged
failure to comply with this decision.

On November 4, 2003, Plaintiffs filed a second request for a
due process hearing alleging that DCPS had failed to issue the
hearing officer's decision from the previous hearing and that DCPS
and Friendship Edison Public Charter School ("Friendship"), the
school at which D.S. was then enrolled, had failed to convene the

---

[4](...continued)
hearing for the Court's review. Therefore, the Court's review will
not include events preceding the November 2003 decision.

MDT/IEP meeting.  Compl. ¶ 12.  On January 8, 2004, the hearing officer dismissed Plaintiffs' request without prejudice, ruling that: "DCPS did not fail to issue and [sic] HOD for the proceeding Petitioner initiated on August 4, 2003 (that HOD was issued on October 24, 2003), and (2) Friendship and DCPS made good faith efforts to schedule the evaluations prescribed . . . however, Petitioner's truancy frustrated efforts to complete the evaluations."  AR at 4.

On February 12, 2004, Plaintiffs filed another request for a due process hearing, alleging that DCPS and Friendship had failed to provide D.S. an appropriate placement for the 2003-2004 school year.  A due process hearing was held on March 3, 2004, at which counsel for both sides stipulated that D.S. had enrolled at Eastern High School on October 16, 2003.  The Hearing Officer issued a decision on March 10, 2004, dismissing Plaintiffs' petition with prejudice.  Compl. ¶ 13.  The hearing officer found that:

> Friendship attempted to conduct evaluations [of D.S.] on December 3, 2003, but Petitioner was absent.  Friendship made additional efforts to schedule evaluations on December 8th, 12th, and 15th.  Petitioner was absent on December 2nd, 3rd, 4th, 8th, and 11th . . . Since . . . December 18, 2003, Petitioner has repeatedly failed to attend school, thereby depriving DCPS the opportunity to evaluate him.    On three occasions, Ms. Nicholson scheduled evaluations which Petitioner did not attend. On one occasion, Petitioner appeared for a[n] . . . evaluation, but left the evaluation and did not return.

AR at 26.  Based on these findings, the hearing officer concluded that "DCPS has made good faith efforts to schedule the evaluations"

4

necessary for D.S.'s placement, "[h]owever, Petitioner's continued truancy frustrates efforts to complete the evaluations." Plaintiffs filed a Motion for Reconsideration on March 22, 2004, the grounds for which are unclear from the record; it would appear that no decision has ever been issued. Compl. ¶ 14.

From sometime in March 2004 until approximately May 19, 2004, D.S. was at Oak Hill, a youth detention facility. During that time, his IEP was developed and a placement was selected over the course of three meetings on April 29, 2004, May 12, 2004, and June 28, 2004. AR at 72 (Sept. 14, 2004 Hearing Tr. at 64). The IEP classified D.S. as emotionally disturbed and learning disabled. AR at 46.

During the June 28 meeting the parties discussed an appropriate placement for D.S.. In attendance were D.S., a special education teacher, an "LEA and Interpreter," Michelle Neal of Youth Services, D.S.'s attorney, and Victor Reese, a representative for the District of Columbia Alternative Learning Academy ("DCALA"). Id. at 35. D.S.'s parents were not present, because their phone line had been disconnected and DCPS was unable to reach them.

DCPS suggested DCALA, a public/private partnership school, as an appropriate placement for D.S.. Id. at 38. It was indicated that DCALA was "able to implement the IEP in the areas of specialized instruction, related service, and transition plan." Id. at 40. D.S.'s counsel requested literature regarding the

5

program, which was described by Mr. Reese.  Id. at 38-39.  D.S.'s counsel and a representative from Youth Services suggested City Lights, a private school in Northeast Washington, D.C., as an appropriate placement.  Id. at 39.  There was no representative from City Lights at the meeting.  Id. at 38.  The meeting resulted in the issuance of a prior written notice to Ms. Savoy-Kelly, indicating D.S.'s placement at DCALA.  Id. at 35.

Although Plaintiffs do not specifically reference it in the Complaint, on August 10, 2004, Plaintiffs filed another request for hearing alleging that DCPS had failed to provide special education services since March 10, 2004, and had failed to provide an appropriate placement for the 2004-2005 school year.  Id. at 4-5. A due process hearing was held on September 14, 2004.  Id. at 5.

During the hearing, Mr. Reese described the DCALA program as servicing students whose "primary disability is ED [emotionally disturbed].  Students receive their core academic subjects and they also receive individual and group counseling, as well as a transitional service program here."  Id. at 72 (Hearing Tr. at 47). He further indicated that the school's special education teachers are certified.  When asked specifically about D.S.'s IEP, Mr. Reese indicated that DCALA could provide D.S. with the specialized instruction, social work services, and speech and language therapy required by the IEP.  Id. (Hearing Tr. at 50).  During D.S.'s counsel's cross-examination of Mr. Reese, he testified that DCALA's

6

admission process requires a review of the student's IEP before acceptance into the program. <u>Id.</u> (Hearing Tr. at 53). While D.S.'s counsel stated at the end of the hearing that she was concerned about DCALA's ability to address the learning disability aspect of D.S.'s IEP, she failed to ask Mr. Reese any questions about that subject. <u>Id.</u> (Hearing Tr. at 86).

The Hearing Officer issued a decision on September 20, 2004. He found that Plaintiff had been properly placed at DCALA, and that Plaintiffs' primary objection to DCALA was its location in southeast Washington, D.C., since D.S. was living in a group home in northeast Washington, D.C.. <u>Id.</u> at 6. The Hearing Officer also concluded that "DCALA offers the specialized instruction, related services, behavior modification program, and transitional services that [Plaintiff] requires." <u>Id.</u> The decision noted that "City Lights would be an appropriate placement for [Plaintiff] ... However, in light of the [Hearing Officer's] determination that DCPS' proposed placement was appropriate, the [HO] will not order placement at City Lights." <u>Id.</u> at 7.

Plaintiffs filed this Complaint on October 13, 2004. In Count I of the Complaint, Plaintiffs allege that Defendants denied Plaintiff a FAPE when it failed to implement Plaintiff's IEP, developed in June 2004. Compl. ¶ 15. In Count II, Plaintiffs allege Defendants denied D.S. a FAPE by failing to develop an appropriate IEP for the 2003-2004 school year. In Count III,

Plaintiffs allege that Defendants denied D.S. a FAPE by failing to issue a notice of placement to an appropriate setting for the 2004-2005 school year.

Plaintiffs request that the Court order that DCPS fund placement of D.S. at City Lights; provide compensatory educational services for the period of time Defendants failed to provide such services; and award attorneys' fees and costs.

## III.  ANALYSIS

### A.    Defendants' Motion to Dismiss

As noted above, the Court will only address Defendants' arguments related to Plaintiffs' Rehabilitation Act and Section 1983 claims with respect to the Motion to Dismiss.

#### 1. Standard of Review

A motion to dismiss should be granted only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  A motion to dismiss tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim.  See Fed. R. Civ. P. 12(b)(6).  Accordingly, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff.  Shear v. Nat'l Rifle Ass'n of Am., 606 F.2d 1251, 1253 (D.C. Cir. 1979).

8

### 2. Plaintiffs' Rehabilitation Act Claim Must Be Dismissed For Failure To State A Claim Upon Which Relief Can Be Granted

Plaintiff's Complaint alleges a cause of action under Section 504 of the Rehabilitation Act, 29 U.S.C. §§ 701 et. seq.. To state a claim under Section 504 of the Rehabilitation Act, a plaintiff "must show that he or she was discriminated against solely by reason of his [or her] handicap." R.S. v. District of Columbia, 292 F. Supp. 2d 23, 28 (D.D.C. 2003). The D.C. Circuit has made clear that in the IDEA context, "something more than a mere failure to provide the 'free appropriate education' required by [the IDEA] must be shown." Lunceford v. D.C. Bd. Of Educ., 745 F.2d 1577, 1580 (D.C. Cir. 1984). To meet this standard, a plaintiff must show "bad faith or gross misjudgment" by the defendant. R.S., 292 F. Supp. 2d at 28.

As Defendants point out, although Plaintiffs' Complaint alleges that a FAPE was not provided, it "makes no mention of either bad faith or gross misjudgment . . . ." Defs.' Mot. to Dismiss at 6. Moreover, Plaintiffs fail to respond in any way to this argument in any of their papers. It is well-established in this Circuit that when a plaintiff fails to respond to an argument made in a motion to dismiss, the court may treat that argument as conceded. See Local Rule 7.1(b); FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997). Accordingly, even considering the relatively low standard for stating a claim in a Motion to Dismiss,

9

Plaintiffs' failure to allege any facts or make any argument whatsoever as to their Rehabilitation Act claim must result in its dismissal.

### 3. Plaintiffs' Section 1983 Claim Must Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

Plaintiffs' Complaint also alleges a cause of action under 42 U.S.C. § 1983. To base a Section 1983 claim on a violation of the IDEA, a plaintiff must show: "(1) that the Defendant violated the IDEA; (2) that 'exceptional circumstances' exist, such that the conduct of the defendant causing the IDEA violation was 'persistently egregious and prevented or frustrated [plaintiff] from securing equitable relief under the IDEA'; (3) that the 'District of Columbia has a custom or practice that is the moving force behind the alleged IDEA violations'; and (4) that 'normal remedies offered under the IDEA – specifically, compensatory education - are inadequate to compensate [plaintiff] for the harm that he [or she] allegedly has suffered.'" R.S., 292 F. Supp. 2d at 28 (quoting Walker v. District of Columbia, 157 F. Supp. 2d 11, 30 (D.D.C. 2001)).

While Plaintiffs have alleged a violation of the IDEA, their Complaint makes no mention of any "persistently egregious" conduct on the part of Defendant, or any "custom or practice" giving rise to an IDEA violation. Nor do Plaintiffs claim that the IDEA offers insufficient relief for their claims. Moreover, Plaintiffs fail to

respond to Defendants' argument with respect to their Section 1983 claim in any of their papers.  See Local Rule 7.1(b); Bender, 127 F.3d at 67-68.  Plaintiffs' Section 1983 claim therefore must be dismissed.

### B.   Defendants' Motion for Summary Judgment[5]

#### 1.   Standard of Review

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  A fact is "material" if it might affect the outcome of the action under the governing law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact.

---

[5] Defendants argue that this case should be dismissed and sanctions should be imposed, because Plaintiffs failed to comply with the Court's Scheduling Order of February 17, 2005, which required Plaintiffs to file a Motion for Summary Judgment by April 14, 2005.  To this date, Plaintiffs have not filed that motion, and their reasoning for not doing so is hardly convincing.  Because of the severity of the relief Defendants seek, and the fact that Plaintiffs' failure has not prejudiced Defendants in any way, the Court will not dismiss the case or impose sanctions for Plaintiffs' failure.  See Shea v. Donohoe Constr. Co., 795 F.2d 1071, 1078 (D.C. Cir. 1986); Jackson v. Washington Monthly Co., 569 F.2d 119, 123 (D.C. Cir. 1977).  Significantly though, without a Motion for Summary Judgment before it, the Court would be unable to grant Plaintiffs the relief they seek in their Complaint, even if they were entitled to it.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The nonmoving party then must "go beyond the pleadings and by [its] own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotations omitted).  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251-52.

### 2.   Statute of Limitations Under the IDEA

#### a.   October 24, 2003 Hearing Officer's Decision and Defendants' Prior Actions

Defendants argue that the statute of limitations for the IDEA bars all of Plaintiffs' claims.  Defendants focus only on the two hearing officer decisions specifically named in the Complaint - one issued on October 24, 2003, and the other issued on March 10, 2004. Compl. ¶¶ 11, 13.  Plaintiffs' Complaint and Opposition to

12

Defendants' Motion for Summary Judgment, however, refer to a
hearing officer's decision issued September 20, 2004, which is
included in the Administrative Record.  Despite the insufficiencies
and lack of clarity of Plaintiffs' Complaint, the Court will treat
Plaintiffs' Complaint as challenging that decision as well.

At the time Plaintiffs filed their Complaint, the applicable
statute of limitations for review of a final agency decision under
the IDEA was thirty days.  While Plaintiffs are correct that at
that time, the IDEA itself did not specifically state a statute of
limitations, the D.C. Circuit had "borrowed" the thirty day
statute of limitations from D.C. Court of Appeals Rule 15(a), which
governs review of agencies' orders and opinions.  Spiegler v.
District of Columbia, 866 F.2d 461, 462 (D.C. Cir. 1989).

Plaintiffs' Complaint was filed in this Court on October 13,
2004, almost a year after the issuance of the October 2003 hearing
officer's decision.  Therefore, to the extent Plaintiffs seek
review of that decision, or any of Defendants' actions prior to
that time, those claims are clearly time-barred.

**b.   March 10, 2004 Hearing Officer's Decision**

While the March 10, 2004 hearing officer's decision was issued
almost seven months before the filing of this Complaint, Plaintiffs
had filed a motion for reconsideration of that decision, which
still has not been decided.  In R.S., on a matter of first
impression, the court held that a motion for reconsideration tolls

13

the statute of limitations for IDEA claims. R.S., 292 F. Supp. 2d at 26-27. The court relied on Spiegler, where the D.C. Circuit noted, "in light of the remedial nature of the Act, that principles of equitable tolling may properly extend the 30-day time limit so as not to bar, in the jurisdictional sense, a Section 1415(e)(2) action otherwise properly presented to a reviewing court." R.S., 292 F. Supp. 2d at 26-27 (quoting Spiegler, 866 F.2d at 468). The court further reasoned that since there is a tolling provision in D.C. Court of Appeals Rule 15(b), the very rule from which this Circuit established the statute of limitations for IDEA claims, the tolling provision should also be "borrowed."

In this instance, however, the Court cannot address the validity of the March 10, 2004 hearing officer's decision. Because Plaintiffs' Motion for Reconsideration has not yet been decided, the Court does not know Defendants' final position with respect to the March 10, 2004 decision. In addition, the Administrative Record provided to the Court does not include the transcript of the due process hearing conducted on March 3, 2004, or any other documentation preceding that hearing. As such, the Court must remand to the agency for consideration of the pending Motion for Reconsideration. Given the delays in this case at the administrative level, and the need for young people to obtain their IDEA entitlement as quickly as possible, it is hoped that a decision will be made on that Motion within thirty days.

14

### 3. September 20, 2004 Hearing Officer's Decision

This lawsuit was filed on October 13, 2004, less than thirty days following the issuance of the September 20, 2004 hearing officer's decision.  Therefore, the Court will address Plaintiffs' claims related to that decision.

### a. IDEA Framework

Congress enacted the IDEA to ensure that children with disabilities have access to "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living."  20 U.S.C. § 1400(d)(1)(A) (2000).[6]  State and local educational agencies receiving federal assistance under the IDEA must institute procedural safeguards, id. § 1415(a) (2000), including providing parents of a disabled child "an opportunity to present complaints with respect to any matter relating to the identification, evaluation, or educational placement" of their child, id. § 1415(b)(6).  After parents make such a complaint, they are entitled to "an impartial due process hearing" conducted by the agency, id. § 1415(f)(1).  "Any party aggrieved by the findings and decision made" in the due process hearing can bring a civil action in either state or federal court to obtain "appropriate" relief.  Id. § 1415(i)(2)(A)-(B).

---

[6] References will be made to the previous version of the IDEA, which was in effect at the time Plaintiffs filed their Complaint.

"The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." <u>Schaffer ex rel. Schaffer v. Weast</u>, 126 S.Ct. 528, 536 (U.S. 2005). The party challenging a hearing officer's decision in federal court, likewise carries the burden of proof. <u>Angevine v. Smith</u>, 959 F.2d 292, 295 (D.C. Cir. 1992); <u>Kerkam v. McKenzie</u>, 862 F.2d 884, 887 (D.C. Cir. 1988). The court may make an independent determination but "it must also give 'due weight' to the administrative proceeding and afford some deference to the expertise of the hearing officer and school officials responsible for the child's education." <u>Lyons v. Smith</u>, 829 F. Supp. 414, 418 (D.D.C. 1993). In other words, a claim brought under the IDEA is "by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." <u>Board of Educ. Hendrick Hudson Central School Dist. v. Rowley</u>, 458 U.S. 176, 206 (1982). The court employs a "preponderance of the evidence" standard of review, and may grant relief as it deems appropriate. 20 U.S.C. § 1415(i)(2)(C).

**b.   September 20, 2004 Hearing Officer's Decision**

With respect to the September 20, 2004 hearing officer's decision, Defendants argue that even if judicial review is not barred by the statute of limitations, Plaintiffs have failed to provide the Court "with any facts that show that the Hearing Officer erred other than the assertion that Plaintiffs were unhappy

16

with the [hearing officer's decision]."   Defs.' Mot. for Summ. J.
at 7.

The essence of Plaintiffs' argument is that D.S. should be
placed at City Lights, and not DCALA.

In his September 2004 decision, the hearing officer concluded
that:

> DCPS placed Petitioner at DCALA on June 28, 2004.
> DCALA offers the specialized instruction, related
> services, behavior modification program, and transitional
> services that Petitioner requires. Although Petitioner's
> representatives proposed an alternative placement . . .
> City Lights, they offered no information concerning the
> program at City Lights.  The only objection raised to the
> placement at DCALA at the hearing related to its location
> in southeast Washington.  The hearing officer concludes
> that DCPS has met its burden of proving that it offered
> Petitioner appropriate placement for the 2004-2005 school
> year.

AR at 5.

Plaintiffs challenge the hearing officer's finding that "the
only objection raised to the placement at DCALA at the hearing
related to its location in southeast Washington."   AR at 7.
Plaintiffs contend that their objection is based on the fact that
DCALA lacks a learning disability program as required by D.S.'s
IEP.

The law is well-settled that "if there is an appropriate
public school program available, i.e., one reasonably calculated to
enable the child to receive educational benefits, the District need
not consider private placement, even though a private school might
be more appropriate or better able to serve the child. . . .  In

17

short, the inquiry as to the appropriateness of the State's program is not comparative." <u>Jenkins v. Squillacote</u>, 935 F.2d 303, 305 (D.C. Cir. 1991) (internal citations and quotations omitted) (emphasis in original).

Therefore, DCPS was not required to even consider City Lights, a private school, unless Plaintiffs established that DCALA would not serve D.S.'s educational needs. Plaintiffs failed to do so. While Plaintiffs' counsel voiced her concern at the end of the due process hearing that DCALA would not address D.S.'s learning disability, she failed during her cross-examination of DCALA's representative to ask him a single question about the school's ability to service learning disabled students. Moreover, there is no evidence in the Administrative Record, or in the filings before this Court to support Plaintiffs' position. To the contrary, as noted above, D.S.'s admission to DCALA was based on a review of his IEP and a determination by DCALA that the school could satisfy the requirements stated therein.

With nothing more than counsel's unsupported assertions about DCALA's inability to meet D.S.'s educational needs, Plaintiffs have not met their burden of showing, by a preponderance of the evidence, that the hearing officer's decision was incorrect.

**IV. CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss is **granted** with respect to Plaintiffs' Rehabilitation Act and

18

Section 1983 claims, and Defendants' Motion for Summary Judgment is **granted** with respect to the September 20, 2004 hearing officer's decision. The Court **remands** this case to the agency for consideration, as expeditiously as possible, of the pending Motion for Reconsideration of the hearing officer's March 10, 2004 decision. An Order will issue with this Opinion.


April 14, 2006                          /s/ _____ _____
                                        Gladys Kessler
                                        United States District Judge



**Copies to: Attorneys of record via ECF.**

19